Moral argument, 15 minutes per side. Ms. Clark-Weintraub for the appellate. Just one second, let's let everybody get seated and settle. You may proceed. Good morning, I've asked to reserve three minutes for rebuttal. You may. May it please the Court. I represent participants in two General Motors 401K plans who invested in the General Motors Company stock fund, an ESOP that was an investment option in both of the plans. The plaintiffs here and the certified class that they represent lost millions of dollars when State Street, which was the independent fiduciary for the General Motors Company stock fund, failed to sell GM stock, which was held in the fund, when it had become an imprudent investment. Did these employees have a choice to invest in some other, their 401, in something else? Absolutely, Your Honor. But as this Court recognized in its prior decision from an earlier erroneous dismissal of this case by the district court, the fact that plan participants have a choice of investments does not relieve the fiduciary of its fiduciary function, which is to choose the investment options in the plan. And to the extent that an imprudent investment option remains in the plan and there is a loss resulting from that, the fiduciary is liable. So the imprudency here was in not selling the GM stock at, what, each point over, what was it, 18, 19 months? Yes, Your Honor. We allege that the earliest date by which GM stock became an imprudent investment was July 15 of 2008, obviously as the events of 2008 unfolded, in our view. But you argue really that at each point they should have sold it on any given day. Exactly, Your Honor. And they ultimately sold it on March 31, 2009. Okay. And so there is evidence that these different levels of committees, and the independent fiduciary committee is the top level, did meet repeatedly. As I understood the record, the independent committee met nearly once a week or certainly once every couple of weeks over this period. Is that right? There is something about they met 43 times. Well, they met, I will take whatever number was asserted by State Street. I think there is a couple of important things to know about those meetings. First, the vast bulk of them that occurred prior to a certain date in the fall of 2008 were not meetings expressly about the GM company stock fund and GM stock. They were just routine meetings that the fiduciary committee would have to review all of the company stocks for which State Street acted as a fiduciary. So this independent committee was not peculiar to the GM ESOP? That is correct. The independent fiduciary committee had ultimate fiduciary responsibility with respect to all company stocks for which State Street acted as. But some of these lower level committees were more specific? The stock review committee also reviewed numerous stocks. There was a particular investment officer who was detailed to review each of the company stocks for which State Street acted as a fiduciary. So each company stock had a particular person whose job it was to gather information, etc., but the committees had wider ranging responsibilities. And there is a company stock group. Is that the lowest level then? The fiduciary group was the umbrella organization. Then there is something called the company stock group which did daily monitoring and ongoing. That is it. That is it, Your Honor. And then there was a stock review committee that would meet periodically. Was the company stock group specific to GM? No. Okay. No. None of those committees were specific to GM. I would like, if I could, to address three issues quickly with Your Honors this morning. The first issue is why the district court's decision should be vacated and remanded. The second issue is why summary judgment should be entered for the plaintiffs in the event this court is inclined, as State Street suggested, to review the summary judgment motions and decide them de novo. And the third issue I would like to address with the court is why summary judgment cannot be entered for State Street on this record. Quickly, with respect to the first issue, we believe that the district court's decision should be vacated and remanded because it is predicated on a presumption of prudence previously afforded to ESOP fiduciaries which has subsequently been rejected by the Supreme Court in the Fifth Third Bank v. Dudenhofer case. In Dudenhofer, the Supreme Court held that ESOP fiduciaries were subject to the same duty of prudence that applies to ERISA fiduciaries generally, save for the need to diversify the fund's assets. Okay. I agree with that. But evidence was, I mean, argument was made below on the general prudence, not just strictly on Dudenhofer. Well, but- It's in the record. Excuse me, Your Honor. Okay. The district court, though, whatever arguments are made- I understand that. But there is a record on which, you know, there's a general principle we can affirm on any basis presented in the record. So then we go to the substance of whether given the lack of a necessity of diversity, then did they exercise prudence? Okay. I'll let you answer that question since that is what Your Honor would like me to address. If this court does decide the motions under a de novo standard, then the district court's decision should be reversed because the district judge, its legal analysis was fundamentally flawed and it is contrary to law. Summary judgment should have been entered for the plaintiffs here. Irrespective of whether the evidence is viewed through the lens of the presumption of prudence, which applies an abuse of discretion standard, as this court is aware, or without the benefit of the presumption as Dudenhofer requires, the undisputed facts here overwhelmingly demonstrate a fiduciary breach in this case. As this court recognized in its earlier decision on appeal in this case, ERISA imposes on a fiduciary an unwavering duty to act as a prudent person would. Applicable regulations promulgated by the Department of Labor provide that an ERISA fiduciary has satisfied ERISA's duty of prudence when it has, quote, made a determination that the particular investment is reasonably designed to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain or other return associated with the investment. An ESOP fiduciary is duty-bound to sell company stock when the risk-reward ratio is such that continued investment would undermine the plan's purpose of providing retirement savings by exposing plan participants to inordinate risk. At this point, continued investment in company stock is imprudent. Even when applying the heightened, highly deferential presumption of prudence standard, that has since been rejected, the federal courts, including this court, in its prior decision in this case, universally recognized that a company stock, that the common stock of a company that was facing dire circumstances, that was on the brink of collapse, whose viability in the short term as a going concern was in question, and whose common stock was in jeopardy of becoming worthless, was an imprudent investment for a company stock fund. Summary judgment must be granted to the plaintiffs here, because the undisputed record evidence demonstrates that all of these things, all of them, were true of General Motors during the relevant period. There was a- All of those was the circumstance as of the first of these dates. When they- you pick that date for some particular reason that everybody should have known? Yes, Your Honor. In July of 2008, July 15, 2008, General Motors announced a restructuring plan, eliminated its dividend, hinted that it had very substantial, serious liquidity issues, which were, if not cured, would result in the bankruptcy of the company. At that point in time, even under State Street's internal analysis, they rated the risk of- the riskiness of this stock as 147 on a scale of 50 to 150, where 150 was the highest level of risk. There were significant facts in the record, which we've set forth in our brief, which demonstrated that even as early as July 15, GM stock was an imprudent investment. And indeed, the district court in its decision found that General Motors stock was- that General Motors had- its short-term viability was in question as early as July 15, 2008. Nevertheless, the district court erroneously entered judgment for State Street because it looked not at the company's specific facts that were before State Street with respect to the GM company stock fund and with respect to General Motors at the time, but because it accepted evidence that State Street had submitted that some other fiduciary somewhere, about which we know nothing, and about which we know nothing about their investment strategy, continued to hold GM stock. Are we supposed to focus on the decision or the process? You have to- you have to focus on the decision. This court in file held that the fiduciary breach is the holding of an imprudent investment. Indeed, in the oral argument before the district court, defense counsel conceded at the beginning of his argument that procedural prudence alone is not enough. If a fiduciary, as this court held in file and as Justice Scalia noted in the Fink case, if a fiduciary holds an imprudent investment, that is a fiduciary breach, irrespective of whatever the process was. So that is clear, and to the extent that State Street is arguing that it is entitled to summary judgment simply on the basis that it conducted a procedurally prudent process, we think that is contrary to the legal authority. But even beyond that- Then the court would redo the financial analysis that they did and decide that they made a bad decision? Well, Your Honor, you don't have to redo their analysis. The undisputed evidence in the record shows that this was an imprudent investment, that the risk of loss here was so great that this company's stock fund should not have been invested in this stock. At the point in time that we're talking about, GM owed bondholders and the union, VEBA, over $62 billion and had a market capitalization of just $3 billion. It had announced it did not expect its operations to generate sufficient cash flows to fund its operations, that it did not have other sources of equity available to it because of the financial crisis, and that its auditors could have substantial doubt about its ability to continue as a going concern. Securities analysts that covered GM recognized and issued reports stating that there was little or no value left in GM equity because of these facts. And, indeed, State Street's own analyst, Jonathan Warrecker, agreed with that assessment. I'm sorry. When you say their own analyst, which level was- Mr. Warrecker was an analyst who sat in London, but he was specifically requested by the fiduciary group to give his analysis on GM and whether or not there was a risk of bankruptcy with respect to- Basically, they got lots of advice. They had lots of process. They just made a really bad decision. Exactly, Your Honor. This is a very unique case. I can't stress that strongly enough. There was such overwhelming evidence of imprudence here. But is it also the case that the reason people ended up taking a bath was they sold when they did? If they had ridden it all the way down and back up, things would have turned out better. There's no question that employees who had invested in the company stock fund would have lost some money, no matter what, because, obviously, the stock was trending down during this period. The point, though, is that it was State Street's job to preserve as much of that investment as it could and to cease holding GM stock when it became imprudent. And then it was duty-bound to sell. And some of these losses, not all of them potentially, but some of these losses, a great deal of these losses would have been avoided if State Street had simply done its job in this case. But you didn't really answer Judge Boggs' question. What if they never sold at all? If who never sold? State Street? Yeah. In other words, didn't the stock come back? I mean, after all the conniptions. No. The stock never came back. The GM went into bankruptcy. I mean, they sold in March, and they got whatever they got for the shares at that point, a buck, a buck-fifty, whatever it was. When GM, quote, came back, it wasn't for these shareholders. It was for… No. It was an entirely new company. There was a reorganization. The company went bankrupt. Thank you. Good morning, Your Honors. May it please the Court, I'd like to start with a brief discussion of the legal standard and then talk about the facts concerning State Street's performance. And, of course, this is the first Orissa Company stock case that will be decided by the Sixth Circuit since the Supreme Court reversed the Sixth Circuit in the Dudenhofer Fifth Third Bank case. So the question is this. What's the standard for deciding these company stock cases after the elimination of the presumption of prudence? Because that's what the Supreme Court did. They took away the presumption of prudence that this Court had adopted in the Cooper case. One of the panelists, Judge Sir Heinrich, of course, you were on the panel in the Cooper case. Here's what's left. The presumption is gone, but the governing law for the duties of trustees and how you prove a breach of fiduciary duty by a trustee is unchanged from the prior Sixth Circuit law. The presumption is gone. The basic standard is the same. It's in Orissa, Section 404. It's called the prudent man's standard of care, and it looks at trustee performance by comparison to what other trustees would have done. It is not a risk-reward how good was the investment standard. Section 404 of Orissa says this. The fiduciary shall discharge these duties with the care and skill under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with matters like this would use in a conduct of an enterprise of like character with like aim. You're quoting Orissa 404 at that point? I am. This is an entire quote. What was your adversary quoting with respect to the risk-reward? Was that regulation? That's a Department of Labor regulation. It's the General Department of Labor regulation for diversified investments. Our expert witnesses who are competitors of State Street said they don't look to that regulation because it is for diversified investment portfolios. Now, the Section 404 test, the comparison test, not an investment performance test, it was recognized by the Supreme Court in the Fifth Third case where they quoted it and said it imposes a prudent person standard to measure these investment decisions. It was the same standard used by this court in the Fifth Third case, which is back down here but it's now in your mediation program, where the court said Orissa imposes a duty to act as a prudent person would in a similar situation. This court, in the first fail opinion, which was sent back down, used the same standard. Orissa imposes a duty to act as a prudent person would in a similar situation. The district court used that standard. The district court quoted in full Section 404 and used that comparison standard throughout her summary judgment opinion. Will she also use the presumption of prudence? Yes, the presumption of prudence applied and her opinion uses the presumption of prudence language throughout. It also uses the specific language that I'm talking about and she makes specific findings that State Street's performance was prudent as well as saying it met the presumption. She used the presumption of prudence, she also made findings that the performance was prudent. Now, there have been two circuits that have dealt with this same Orissa company stock situation since the Supreme Court decision. The Fourth Circuit in the Tatum case, and if I may read one sentence of what they said, our focus is on whether the fiduciary engaged in a reasoned decision-making process consistent with that of a prudent man acting in a like capacity. That's Tatum at page 356. The Ninth Circuit in the Amgen opinion got right down to the key point. Here's what they said. The proper question is not whether the investment results were unfavorable, but whether the fiduciary used appropriate methods to investigate the merits of the transaction. That's the Ninth Circuit in Amgen at page 865. And if I could, Your Honor, if I could then turn to what State Street's process was that they used in this case. And there's lots of evidence. There were 25 depositions taken, 37,000 documents were produced, expert witness reports were filed. State Street uses a three-tiered fiduciary process. And Judge Boggs, just to clarify, they have a company stock group that manages these company stock funds for some 100 companies. That's the ground level. There's a stock review committee. These monthly reviews for companies that they consider to have some particular risk or problems. State Street had General Motors on that list because of internal ratings that they do, which counsel mentioned. It had been on that list before the class period began. It was on it throughout. There were some monthly meetings of that stock review committee. They monitor some 20 companies at a time. The independent fiduciary committee is the highest level. That is senior executives from outside of the company stock field as well as inside, investment managers who manage billions of dollars of money. They held more than 30 meetings specifically concerning General Motors during the time period of this class action. They used special outside counsel. Charlie Smith from K&L Gates has been advising trustees in this field since ERISA was enacted. Because there was an important issue about government funding for General Motors, bank credit was very tight. We all remember the time period. They employed lobbyists in Washington, not to lobby, but to advise them on how the lobbying process was going. Would General Motors be getting government bridge loans? They employed their own financial analysts, Stout, Rezios, and Ross. The valuation firm comes out of Detroit. I don't see this explanation. I understand that they were waiting to see what was going to happen, but all of the intelligence was telling them that it didn't matter to the shareholders because they were going to be left with nothing. So what was the other side of it? Your Honor, all of the intelligence was not telling them that. What has been quoted by counsel in their briefs is the most negative of the analyst reports, and those negative analyst reports were out there. But let me go through what is the material that they were looking at. Let me start with the beginning of the class period. Judge Boggs, you asked a question about what was happening at that point. July of 2008, counsel say it was imprudent to continue to hold the stock at that point. There was a large operating loss announced by General Motors at that point. There was also a plan announced for a turnaround program for General Motors, announced at the same time. What happened in the market? The stock price went up, not down. The market responded with the price going up. That's the time, counsel says, it was a horrendous mistake to have not sold. Now State Street was not passive throughout. There was a decision made by State Street in November of 2008 to stop, to bar employees from making additional purchases. What had happened was the prospects for General Motors, with government support, which was anticipated, and I'll address that more in a minute, were such that the employees were actually buying up all of the available outstanding stock. Couldn't sell anymore. General Motors did a new issue, registration with the SEC. State Street decided, we're going to let people hold the stock they have here. We're not going to allow them to purchase more because there's a level of uncertainty. We had two of State Street's competitors provide expert reports. They reviewed all of the analysis. They said that's exactly the right decision at the right time. Now, before the government bridge loans, which came in December of 2008, what were the prospects for those loans? We provided, well, first of all, the fact is that the loans were provided by the federal government. Secondly, we provided an expert report from Professor Zimmerman of Michigan State, the business school, the former chief economist at Ford Motors, also worked with the Council of Economic Advisors. His advice, his expert report, concluded that there was a very reasonable prospect throughout for these government loans to support Chrysler and to support General Motors. Why is that? Because the potential collapse of the auto industry would have presented a systemic threat to the U.S. economy. So we have a period going up to December of 2008 when there's consideration underway in Washington for bridge loan support. This is after the Lehman Brothers collapse. Private support was very hard to find. There was a vote in Congress, in the Senate, on December 11, 2008, against providing federal funding. State Street, that next morning, began to sell the stock because they thought there was a significant short-term risk of a bankruptcy. What else happened that day? President Bush announced that the administration was going to provide funding through TARP loans. Within 24 hours, he had announced that. Within one week, $13 billion in interim funding was provided to give General Motors a safe harbor while it negotiated with its... Now, I'm looking at your brief, page 14, which refers to the meeting of December 12, the previous day's negative Senate vote, which signaled the use of TARP funds for the benefit of the auto industry was unlikely. But then you're saying that, in fact, Bush went ahead and made these loans? Bush went ahead and made the loans. He made the loans within the next week, on December 19. Obviously, there are lots of details here, but the cut to the chase is, GM was in bad shape, but there were hopes, which, although they achieved some interim success, were ultimately dashed, that just like Chrysler came out of it, what, 30 years ago under Iacocca, that GM might do the same. Is that, in a very broad, unfair stroke, what your argument is here? It's broad strokes, but it reflects exactly what did happen, Your Honor. And, in fact, as to the likelihood of government support, when President Bush authorized the bridge loans that were needed with TARP funds... You've referred to a couple of experts that said what you were doing was correct. Are we down to a battle of experts on this? Your Honor, I don't think so. It's almost like a standard of practice. What is the standard of a prudent investor? Are we down to they have an expert, you have an expert? I don't think so, Your Honor. Let me give you two answers. Then what's the point of telling us about experts? Well, I think we're not down to a battle of the experts. I think it is relevant, and it's valuable evidence. The two of our competitors reviewed the minutes and said that they thought the process was good, and they would have made the same decision. And if they had two experts that said the process was bad, what would that do? Well, I think, first of all, they don't. They have one expert who has, and I won't go into the details from the briefs, his reports have been rejected four times that I know of for expressing legal conclusions. More to the point, Judge, we have other evidence, and it's the most important evidence that we could have. It's not just a hypothetical comparison. We know, and it's in the record, what were other pension plans doing about General Motors stock. And the record is, and we provided this to the district court, other pension plan fiduciaries with the same responsibilities were holding and buying the stock during this period. As of September 30, three of the largest holders, New York State Common Retirement System, three million shares they were holding, College Retirement Equities Fund. Don't we have to know the background for that? Don't we have to know what else was in the portfolio? Don't we have to know what else they were doing, what their charge was? When they bought it? As to their charge, Your Honor, their duty is the same duty that State Street had under ERISA Section 404. The same prudent investment responsibilities apply to any of them. As to when they bought it, the fact of the matter is, Your Honor, that the State Teachers Retirement Fund of Ohio increased its holdings in General Motors stock in the fourth quarter of 2008. They bought over a million shares of new stock. The Canadian Pension Plan Investment Board. I think Judge White's question might have gone to the point of, is there a difference in buying or not selling when it's 1% of your holdings versus if it's 90% of your holdings? Your Honor, I think your duties are essentially the same. Your decision responsibilities are the same. Presumably, those organizations were using the same sort of investment analysis, due diligence that it's completely clear State Street used throughout. We have no idea whether they were hedging in any fashion or what they were doing to protect themselves. I mean, we don't know the rest of their portfolio or why they did it. Your Honor, we do not have that in the record. What we do know is that the fact of these other investments, parallel investments, has been accepted as evidence in cases like this. In the Cooper case, for example, in Landsgraf, HCA, the Columbia HCA case, the Sixth Circuit accepted that kind of evidence as persuasive evidence. The Huntington Bank shares of Russell litigation, the district court, accepted the same kind of evidence as persuasive evidence. Counsel, your time has expired, but let me ask you briefly, and I'll ask your adversary as well. These are all on summary judgment. They talk about why they should give it to one side, not give it to the other. Is there anything for trial here? If we were to say, you know, geez, we can't quite split this baby, would it be at all plausible to send it for trial? And if so, what would you try? I don't think there is, Your Honor. There was a complete deposition record with all of these depositions submitted. The minutes of all of the committee meetings were submitted with all of the exhibits that they had. So basically you're saying there's a knife edge here. We've got to say, or the district court, we have to decide on the same standard, prudent, not prudent. I think you need to, if I may, simply reaffirm the test you've been using before and then apply it to the record that you have. That's fine. We'll ask your adversary. You can work your answer into your argument as you wish. Thank you, sir. Just very quickly, I'd like to address the questions that each of Your Honors asked Mr. Boies. Judge White, you asked Mr. Boies what was in it for shareholders. He never answered that question because he can't. There's not a scintilla of evidence in this record that a government bailout of GM was going to do anything for GM shareholders. The shareholders were going to lose all or almost all of their investment no matter whether GM went into bankruptcy or whether it didn't. If they didn't go through bankruptcy and the government didn't take a position, then why wouldn't just the cash take care of it? Well, it couldn't, Your Honor, because the liability so far outstripped the assets of the company. They had $62 billion in liabilities they owed to the bondholders. They owed to the Union VEBA. If the government came in, they were going to owe money to the government as well, and the government was taking equity positions in all the companies that it was bailing out, and so that was going to reduce the value of the shareholdings that existed in GM to practically nothing. That's what all the analysis in the record showed. Wouldn't Chrysler back in the 70s have smelled the same way? I was just going to go to Your Honor's point, Judge Boggs, that there was hope. Well, hope is not enough. When you're an independent fiduciary, you're not supposed to be risking retirement savings by hoping that it's all going to turn out right in the end. Your job is to measure risk. Your job is to determine whether or not this stock is too risky to hold, and defense counsel's point that this regulation doesn't apply, there is not a scintilla of legal authority for that point either. The regulation simply mirrors Section 404A of ERISA, which embodies the duty of prudence. There are cases which have recognized that the regulation applies to ESOP fiduciaries, the Ford case and the DeFelice case, which we have cited in our briefs, but more importantly, perhaps, the Department of Labor, in its brief to this Court in connection with the prior appeal, cited Ford with approval and said that the job of an ERISA ESOP fiduciary is to determine the riskiness of the investment. That's what they were supposed to be doing. That's what they didn't do in this case. And turning to Judge SirHeinrich's question about is there a battle of the experts here, which I think picks up Judge Boggs, your last question, yes, there is a battle of the experts here. There was conflicting evidence in the record before the district court with respect to whether or not State Street not only engaged in a procedurally imprudent process, but also whether or not GM stock was an imprudent investment. The plaintiff's expert, Mr. Biller, who has been accepted most recently by the Tatum Court, Mr. Boyce just cited Tatum, testified that the stock was imprudent. State Street's process was imprudent. They had experts who said otherwise. The court, there were motions in Lemonade to exclude all these experts, but the district court let them all in. She did not exclude any of the experts. Therefore, there was conflicting evidence in the record. And if there would be a trial in this case, there would be a trial which would have the experts testifying in front of the district court, would have the fiduciary committee members testifying in front of the district court, and she could make credibility. If you say district court, any reason it wouldn't be a jury? It's a bench trial, Your Honor. It has to be? Yes. Yes, Your Honor, that's my understanding. I see my time is up. Obviously you want to win on summary judgment right now and deny their summary judgment, but you're saying that it would be plausible and obviously you'd prefer a trial to a loss. Of course, Your Honor. Again, we believe that that's the appropriate thing here. Or even a trial to a decision. Okay. All right. Anything else, judges? Okay. Thank you, counsel. Thank you, Your Honor. Okay.